**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VANS, INC., and VF OUTDOOR, LLC<br><br>    Plaintiffs,<br><br>    v.<br><br>PRIMARK STORES LTD.; PRIMARK LIMITED; PRIMARK US CORP.,<br><br>    Defendants. | Civil Action No.  18-cv-7214<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Vans, Inc., and VF Outdoor, LLC (collectively, "Vans") by and through their counsel, brings this action against defendants Primark Stores Ltd., Primark Limited, and Primark US Corp. (collectively, "Primark"). As grounds for this complaint, Vans alleges the following:

**NATURE OF THE ACTION**

1.      This is an action for trademark infringement, false advertising and unfair competition arising under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.* and under the common law and deceptive and unfair trademark practices laws of the State of New York, N.Y. Gen. Bus. Laws § 349.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(a), and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.      This Court has personal jurisdiction over defendant Primark Stores Ltd. because it is engaged in substantial and regular business in the State of New York and in the Eastern District

ME1 28811077v.3

of New York, including by selling its goods through a proprietary brick-and-mortar retail store located in the Eastern District of New York. Additionally, defendant Primark Stores Ltd.'s acts have caused injury to plaintiff Vans within the State of New York and the Eastern District of New York.

4.     This Court has personal jurisdiction over defendant Primark Limited because it is engaged in substantial and regular business in the State of New York and in the Eastern District of New York, including by selling its goods through a proprietary brick-and-mortar retail store located in the Eastern District of New York. Additionally, defendant Primark Limited's acts have caused injury to plaintiff Vans within the State of New York and the Eastern District of New York.

5.     This Court has personal jurisdiction over defendant Primark U.S. Corp. because it is engaged in substantial and regular business in the State of New York and in the Eastern District of New York, including by selling its goods through a proprietary brick-and-mortar retail store located in the Eastern District of New York.  Additionally, defendant Primark U.S. Corp.'s acts have caused injury to plaintiff Vans within the State of New York and the Eastern District of New York.

6.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because defendants Primark Holdings Unlimited Company and Primark U.S. Corp. are subject to personal jurisdiction within this district and/or because a substantial part of the events giving rise to these claims occurred within this judicial district.

## THE PARTIES

7.     Vans, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1588 South Coast Drive, Costa Mesa,

2

California 92626.

8.      VF Outdoor, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 2701 Harbor Bay Parkway, Alameda, California 94502.

9.      Upon information and belief, defendant Primark Stores Ltd. is a limited company organized and existing under the laws of the United Kingdom, having its principal place of business at Weston Centre, 10 Grosvenor Street, London, W1K 4QY.  Upon information and belief, Primark Limited regularly transacts business in the United States and in the State of New York.

10.     Upon information and belief, defendant Primark Limited is a limited company organized and existing under the laws of Ireland, having a principal place of business at Arthur Ryan House, 22-24 Parnell Street, Dublin, Ireland.  Upon information and belief, Primark Limited regularly transacts business in the United States and in the State of New York.

11.     Upon information and belief, Defendant Primark U.S. Corp. is a Delaware corporation with a principal place of business of 101 Arch St., Ste 300, Boston, Massachusetts 02110-1103, United States.  Upon information and belief, Primark U.S. Corp. maintains offices and retail locations in, and is authorized to conduct business in, the State of New York.

## FACTS

### *Vans and Vans' Business*

12.     Founded in 1966 in Anaheim, California, by Van Doren brothers Paul and Jim, along with partners Gordon Lee and Serge Delia, Vans has grown from humble beginnings to become one of the most well-known and groundbreaking footwear, apparel, and accessory companies in the world.

ME1 28811077v.3

13.     Vans' products are widely recognized and extremely popular. The company has achieved recognition as ranking among the world's greatest and most recognizable brands. Vans' iconic trademarks and distinctive trade dress related to its classic shoe designs have been consistently used for decades and are known throughout the world to indicate the source of Vans' high quality products. Over the past nearly 40 years, tens of millions of pairs of shoes with Vans' distinctive trademarks and trade dress have been sold in the United States.

14.     Vans' products have amassed significant goodwill and are continuing to grow in popularity.  Indeed, "Vans is the No. 3 'top trend' cited among teens" (Piper Jaffray *Taking Stock With Teens Survey* – Fall 2018).  The brand is also recognized as the top-ranked footwear brand for upper-income females in the United States (Piper Jaffray *Taking Stock With Teens Survey* – Fall 2018).

15.     Much of Vans' success is owed to its enduring reputation for creating lasting and durable footwear products without sacrificing comfort or style, and, perhaps just as important, its longstanding and consistent use of its trademarks and its trade dress. This consistent use of distinctive trademarks and trade dress, combined with Vans' peerless reputation for lifestyle and active shoes, has been instrumental in Vans' lasting popularity.

### Vans' Old Skool and Sk8-Hi Shoes

16.     One of Vans' most popular shoe designs, and indeed one of the most iconic shoe designs in history, is the Vans "Old Skool" shoe, depicted below, which was introduced in 1977 (the "Old Skool Shoe").  Few shoes have remained as consistently popular or are as instantly recognizable as the Old Skool Shoe.

ME1 28811077v.3



*Vans Old Skool Shoe*

17.     The Old Skool Shoe design features the iconic "Side Stripe" trademark, highlighted below.  Originally known as the "jazz stripe," this highly distinctive design element has become the unmistakable hallmark of the Vans brand and is the subject of three United States trademark registrations (see Paragraphs 31-33) (the "Side Stripe Trademark").   The Side Stripe Trademark's prominent placement and often-contrasted color make Vans' shoes immediately recognizable to consumers even at far-off distances.



*Vans Side Stripe Trademark*

ME1 28811077v.3

18.　Since 1977, The Old Skool Shoe has continuously featured a combination of distinctive source-identifying elements, including: (1) the Vans Side Stripe Trademark, in contrasting color to the shoe upper; (2) a white rubberized midsole; (3) a contrast line around the top edge of the midsole; (4) a textured toe box outer around the front of the white midsole; and (5) visible stitching, in contrasting color, including where the lace bracing meets the vamp; all of which combine to form strong enforceable trade dress (the "Old Skool Trade Dress").

19.　Since its release in 1977, tens of millions of pairs of the Old Skool Shoe have been sold in the United States. The Old Skool Shoe originally gained notoriety as the shoe of choice for skaters and other active sports enthusiasts, and in more recent years, the shoe's popularity has exploded with the general public, including high-profile fashion designers, musicians, and celebrities. On account of its pop culture popularity, the Old Skool Shoe has been the subject of numerous examples of unsolicited media coverage and featured in publications aimed at a broad selection of the public, including, among others, *Transworld Skateboarding, Esquire*, *Complex*, *Business Insider*, *GQ*, *The Wall Street Journal* and *W Magazine*.

20.　The Old Skool Trade Dress is nonfunctional and distinctive, and the public recognizes and understands that the Old Skool Trade Dress distinguishes and identifies genuine Vans brand products.

21.　As a result of Vans' extensive use of the Old Skool Trade Dress, Vans has built up and now owns extremely valuable goodwill that the Old Skool Trade Dress embodies.

22.　The purchasing public has come to immediately and unmistakably associate the Old Skool Trade Dress with Vans.

23.　Perhaps just as popular and iconic as the Old Skool Shoe is Vans' legendary lace-up high top shoe, the Sk8-Hi, depicted below (the "Sk8-Hi Shoe").



*The Sk8-Hi Shoe*

24.     Introduced by Vans in 1978 and inspired by the already popular Old Skool Shoe, the

Sk8-Hi Shoe was an instant hit with consumers and has remained a staple of Vans' footwear

offerings. Since introduction, tens of millions of pairs of the Sk8-Hi Shoe have been sold in the

United States.

25.     The Sk8-Hi Shoe has continuously featured a combination of distinctive elements,

including: (1) the Vans Side Stripe Trademark, in contrasting color to the shoe upper; (2) a white

rubberized midsole; (3) a contrast line around the top edge of the midsole; (4) a textured toe box

outer around the front of the midsole; (5) padded corrugated ankle collars; and (6) visible

stitching, in contrasting color, including where the lace bracing meets the vamp, separating the

individual padded ankle collar corrugations, and bisecting the Vans Side Stripe Trademark; all of

ME1 28811077v.3

which combine to form strong enforceable trade dress (the "Sk8-Hi Trade Dress").

26.    The Sk8-Hi Trade Dress is nonfunctional and distinctive, and the public recognizes and understands that the Sk8-Hi Trade Dress distinguishes and identifies genuine Vans products.

27.    As a result of Vans' extensive use of the Sk8-Hi Trade Dress, Vans has built up and now owns the extremely valuable goodwill that is embodied in the Sk8-Hi Trade Dress.

28.    The purchasing public has come to immediately and unmistakably associate the Sk8-Hi Trade Dress with Vans.

29.    The enormous popularity of both the Old Skool Shoe and the Sk8-Hi Shoe has resulted in high-profile collaborations with notable designers and fashion houses in the realm of haute couture and street fashion, including brands such as Marc Jacobs, Stüssy, Pendleton, and Supreme, further broadening the appeal of the classic designs.

30.    The Old Skool Shoe and the Sk8-Hi Shoe also have had a particularly rich history in the music industry as they are revered by band members in the rock and roll and punk music scenes in particular for their style and reputation.  The Old Skool Shoe's and Sk8-Hi Shoe's cult status amongst musicians in turn led to the development of Vans' band shoe program, which was responsible for creating Old Skool and Sk8-Hi Shoe designs dedicated to legendary music groups like Slayer, Descendents, and Bad Religion, as well as Iron Maiden, Slayer, Bad Brains, and Social Distortion.

### *The Famous Side Stripe Trademark*

31.    Since at least as early as the 1970s, Vans has used the Vans Side Stripe Trademark as a distinctive design element on its footwear.  Vans has expended substantial time, money, and other resources in the developing, advertising, and otherwise promoting the Side Stripe Trademark.  As a result of these efforts, consumers readily identify merchandise bearing the Side

8

Stripe Trademark as being high quality merchandise emanating from, sponsored by, or approved by Vans. The Side Stripe Trademark has become well-known among consumers and accordingly should be afforded tremendous strength. Examples of Vans' footwear bearing the Side Stripe Trademark are depicted below.



*Examples of Vans' Side Stripe Trademark on Footwear*

32. Vans is the owner of the Side Stripe Trademark and corresponding United States Trademark Registration No. 2,177,772, issued on August 4, 1998, for the placement of the Side

ME1 28811077v.3

Stripe Trademark on the Old Skool Shoe design, as depicted below, for "footwear."



*U.S. Registration No. 2,177,772*

An Affidavit has been filed pursuant to Sections 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this registration is attached as Exhibit A.

33.    Vans owns United States Trademark Registration No. 2,172,482, issued on July 14, 1998, for the below-depicted shoe design incorporating the Side Stripe Trademark, for "footwear."



*U.S. Registration No. 2,172,482*

An affidavit has been filed pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this registration is attached as Exhibit B.

ME1 28811077v.3

34.    Vans also owns United States Trademark Registration No. 2,170,961, issued July 7, 1998, for the below-depicted shoe design incorporating the Side Stripe Trademark, for "footwear."



*U.S. Trademark Registration No. 2,170,961*

An affidavit has been filed pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this registration is attached as Exhibit C.

35.    Vans has further strengthened the Side Stripe Trademark by incorporating the mark in many designs across its entire product range.  Notably, Vans prominently features the Vans Side Stripe Trademark in connection with apparel products.  Vans has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Side Stripe Trademark.  As a result of these efforts, consumers readily identify merchandise bearing the Side Stripe Trademark as being of high quality and emanating from, sponsored by, or approved by Vans.  Examples of Vans' apparel products bearing the Side Stripe Trademark are depicted below.

ME1 28811077v.3






ME1 28811077v.3



*Examples of Vans' Side Stripe Trademark on Apparel Products*

36.    Vans is the owner of the Side Stripe Trademark and corresponding United States Trademark Registration No. 4,442,122, issued on December 13, 2013 for "clothing, namely, T-shirts, shirts, sweatshirts, pants, shorts, denims, sweater, jackets, belts, boxers, socks, scarves, underwear and swimwear; headgear, namely, hats, caps and beanies."



*U.S. Registration No. 4,442,122*

A copy of the Certificate of Registration for this registration is attached as Exhibit D.

37.    As a result of Vans' extensive use of the Side Stripe Trademark, Vans has built up and now owns extremely valuable goodwill embodied in the mark.

ME1 28811077v.3

38.   The Side Stripe Trademark is a strong source identifier that is uniquely associated with Vans and genuine Vans brand products.

### Vans' Waffle Outsole Trademark

39.   Since at least as early as 1966, Vans has used a highly distinctive "waffle" pattern on its footwear products' outsole, as depicted below (the "Waffle Outsole Trademark"). Vans has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Waffle Outsole Trademark. As a result of these efforts, consumers readily identify merchandise bearing the Waffle Outsole Trademark as being high quality merchandise emanating from Vans. A representative image of a Vans footwear product featuring the Waffle Outsole Trademark is depicted below.



*Vans' Waffle Outsole Trademark*

40.   Vans is the owner of the Waffle Outsole Trademark and the following corresponding United States Registrations:

40.1.   U.S. Reg. No. 5,418,305, issued on March 6, 2018, for the Waffle Outsole Trademark, as depicted below, for "footwear."

14



*U.S. Registration No. 5,418,305 (rotated)*

A copy of the Certificate of Registration for this registration is attached as Exhibit E.

   40.2.  U.S. Reg. No. 1,244,537, issued on July 5, 1983, for the Waffle Outsole Trademark, as depicted below, for "shoes."



*U.S. Registration No. 1,244,537 (rotated)*

An affidavit has been filed pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable. A copy of the Certificate of Registration for this registration is attached as Exhibit F.

   40.3.  Vans also owns United States Registration No. 2,830,071, issued on April 6, 2004, for the mark depicted below, for "clothing, namely t-shirts, pants, shorts, sweatshirts, jackets and headgear, namely, caps and hats."



*U.S. Registration No. 2,830,071 (rotated)*

An affidavit has been filed pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable. A copy of the Certificate of Registration for this registration is attached as Exhibit G.

41.     The Waffle Outsole Trademark is unique, nonfunctional, and highly distinctive, and the public recognizes and understands that the Waffle Outsole Trademark distinguishes and identifies genuine Vans brand products.

42.     As a result of Vans extensive use and promotion of the Waffle Outsole Trademark, Vans has built up and now owns the extremely valuable goodwill that is embodied in this mark.

43.     The purchasing public has come to associate the Waffle Outsole Trademark with Vans.

### *Primark's Infringement and Unfair Competition*

44.     Upon information and belief, Primark is engaged in designing, manufacturing, advertising, promoting, selling, and/or offering for sale apparel, footwear, and accessory products for men, women, and children bearing logos and source-identifying indicia that are studied imitations of Vans' and others' trademarks, including Vans' Old Skool Trade Dress; Sk8-Hi Trade Dress; Side Stripe Trademark; and the Waffle Outsole Trademark (collectively, the "Vans Trademarks and Trade Dress").

ME1 28811077v.3

45.     In or around August 2017, Vans became aware that Primark was offering for sale and selling footwear products in the United Kingdom bearing designs and markings similar to the Vans Trademarks and Trade Dress (the "Infringing Products").

46.     In or around September 2017, Vans notified Primark of its rights in the Vans Trademarks and Trade Dress, the popularity and fame of its products bearing the Vans Trademarks and Trade Dress, and its objection to Primark's Infringing Products. Following correspondence between counsel for Vans and Primark, Primark, upon information and belief, ceased the display, sale, and distribution of the Infringing Products in the United Kingdom. Vans, therefore, considered the matter closed as of January 2018.

47.     Despite Primark's knowledge of Vans' intellectual property rights in and to the Vans Trademarks and Trade Dress and Vans' strong objection to Primark's sale of the Infringing Products, in or around August 2018, Vans became aware that Primark was again marketing, distributing, offering for sale and selling footwear products infringing the Vans Trademarks and Trade Dress. This time, however, the Infringing Products were being sold in the United States through Primark's proprietary brick-and-mortar retail locations, including in the State of New York.

48.     Vans further discovered that Primark had begun to expand its inventory of products designed to mimic and copy the Vans Trademarks and Trade Dress to include knock-off Sk8-Hi Shoes sold alongside its knock-off Old Skool Shoes in Primark's retail locations in New York. Examples of the Infringing Products appear below:



*Primark's Infringing Products*

49.     Upon information and belief, the Infringing Products are calculated and intentional knock-offs of Vans' footwear products bearing the Vans Trademarks and Trade Dress, including, but not limited to, the Old Skool Shoe and Sk8-Hi Shoe, and have been designed to confuse the purchasing public as to the source of the Infringing Products by deliberately incorporating

distinctive elements of the Vans Trademarks and Trade Dress (as shown below).

**Vans' Old Skool Shoes**    **Primark's Infringing "Skater" Low Tops**

 

 

**Vans Sk8-Hi Shoe**    **Primark's Infringing "Skate High Tops"**

 

 

ME1 28811077v.3

50.     Primark has even gone so far as to name its Infringing Products the "Skater" low-tops and "Skate high tops" in a blatant attempt to suggest a connection with Vans' products that bear the Vans Trademarks and Trade Dress, including the Vans' Old Skool Shoe and Sk8-Hi Shoe, which first found fame in the 1970s in the skateboarding community of Southern California.

51.     In addition to copying the Vans Trademarks and Trade Dress, Primark also copies additional features of the Old Skool Shoe and Sk8-Hi Shoe, which further shows its intent to copy Vans' products and trade on Vans' reputation, including the classic white-on-black color scheme, stitching of a contrasting color, and the overall shape and silhouette.  Copying these additional features in addition to the Vans Trade Dress also further increases the likelihood that consumers will be confused.

52.     Indeed, consumers have already begun referring to Primark's Infringing Products as "fake Vans" or "Primark Vans," including posting photos of the Infringing Products on social media platforms such as Instagram under the hashtags #fakevans or #primarkvans.  For example:





Other examples of social media posts are attached as Exhibit H.

53.     Upon information and belief, Primark enlists endorsers and influencers to promote its products, including the Infringing Products, via social media platforms.

54.     Upon information and belief, Primark's influencers promote, review, and model Primark products, including the Infringing Products, via videos and other content posted on YouTube and other social media platforms.

55.     Upon information and belief, Primark's endorsers or influencers function as undisclosed paid spokespersons.

56.     Upon information and belief, Primark's endorsers or influencers receive compensation in the form of monetary payment, credit to Primark's stores, and/or free merchandise in exchange for reviewing and publicizing Primark's products, including the Infringing Products.

ME1 28811077v.3

57.     Upon information and belief, Primark does not require its influencers to disclose, and they do not disclose, that they are compensated by Primark for promoting Primark's products, including the Infringing Products.

58.     Upon information and belief, in the videos, Primark's influencers compare the Infringing Products to Vans authentic products and refer to and promote the Infringing Products as indistinguishable, 'fake' or 'duplicate' Vans, or sometimes as just "the Vans."

59.     Upon information and belief, Primark's influencers claim or otherwise mislead consumers to believe that the Infringing Products are of similar or higher quality, comfort, and functionality than Vans authentic products.

60.     Upon information and belief, Primark's influencers do not disclose any material or financial connection between themselves and Primark to consumers.

61.     Upon information and belief, Primark's failure to disclose the influencers' role as paid spokespersons materially affects the credibility consumers attach to the promotional videos and reviews of the Infringing Products.

62.     Primark clearly intends the Infringing Products to be confusingly similar imitations of Vans' footwear products, including the Old Skool Shoe and Sk8-Hi Shoe.

63.     Primark is well aware of the extraordinary fame and strength of the Vans Trademarks and Trade Dress and the incalculable goodwill embodied therein, and Primark, upon information and belief, was familiar with the Vans Trademarks and Trade Dress when Primark created, imported, and began advertising and selling the Infringing Products.

64.     Primark was furthermore aware that the sale of the Infringing Products would likely cause consumer confusion. Indeed, upon information and belief, Primark knowingly, willfully, and intentionally adopted and used a substantially indistinguishable and confusingly similar

imitation of the Vans Trademarks and Trade Dress.

65.     Upon information and belief, Primark intentionally designed and manufactured the Infringing Products to mislead and deceive consumers into believing they were manufactured, sold, authorized, or licensed by Vans.

66.     Upon information and belief, the Infringing Products are made of cheaper and inferior quality materials than genuine Vans products.

67.     Because the Infringing Products are confusingly similar imitations of Vans' footwear products and deliberately make use of and mimic the Vans Trademarks and Trade Dress, and because consumers readily associate the Vans Trademarks and Trade Dress with the Vans, both prospective and current consumers encountering the Infringing Products are likely to be confused as to their source, including under both pre- and post-sale circumstances, and will believe that the Infringing Products are designed, licensed, or authorized by Vans. This likelihood of confusion and damage to Vans' reputation as a result of the Infringing Products' inferior quality and cheaper construction is another source of damage.

68.     Upon information and belief, Primark intends to continue to design, manufacture, advertise, promote, sell, or offer for sale the Infringing Products unless otherwise restrained.

**FIRST CLAIM FOR RELIEF**
**(Federal Trade Dress Infringement)**

69.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

70.     Vans has used the Old Skool Trade Dress and Sk8-Hi Trade Dress long prior to Primark's marketing, distribution, offer for sale and sale of the Infringing Products.

71.     Primark's use of confusingly similar imitations of the Old Skool Trade Dress and Sk8-Hi Trade Dress is likely to cause confusion, deception, and mistake by creating the false and

misleading impression that Primark's goods are manufactured or distributed by Vans, or are associated or connected with Vans, or have the sponsorship, endorsement, or approval of Vans.

72.     Primark has used marks confusingly similar to the Old Skool Trade Dress and Sk8-Hi Trade Dress in violation of 15 U.S.C. § 1125(a). Primark's activities have caused and, unless enjoined by this court, will continue to cause a likelihood of confusion and deception among members of the trade and purchasing public and injury to Vans' goodwill and reputation as symbolized by the Old Skool Trade Dress and Sk8-Hi Trade Dress, for which Vans has no adequate remedy at law.

73.     Primark's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Old Skool Trade Dress and Sk8-Hi Trade Dress to Vans' great and irreparable harm.

74.     Primark has caused and is likely to continue causing substantial injury to the public and to Vans, and Vans is entitled to injunctive relief and to recover Primark's profits, actual damages, enhanced profits and damages, costs, and reasonably attorneys' fees under 15 U.S.C. §§ 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Trademark Infringement)

75.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

76.     Vans has used and registered the Side Stripe Trademark and Waffle Outsole Trademark long prior to Primark's marketing, distribution, offer for sale and sale of the Infringing Products.

77.     Primark's use of confusingly similar imitations of the Side Stripe Trademark and Waffle Outsole Trademark is likely to cause confusion, deception, and mistake by creating the

false and misleading impression that Primark's goods are manufactured or distributed by Vans, or are associated or connected with Vans, or have the sponsorship, endorsement, or approval of Vans.

78.     Primark has used marks confusingly similar to the Side Stripe Trademark and Waffle Outsole Trademark in violation of 15 U.S.C. §§ 1114 and 1125(a). Primark's activities have caused and, unless enjoined by this court, will continue to cause a likelihood of confusion and deception among members of the trade and purchasing public and injury to Vans' goodwill and reputation as symbolized by the Side Stripe Trademark and Waffle Outsole Trademark, for which Vans has no adequate remedy at law.

79.     Primark's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Side Stripe Trademark and Waffle Outsole Trademark to Vans' great and irreparable harm.

80.     Primark has caused and is likely to continue causing substantial injury to the public and to Vans, and Vans is entitled to injunctive relief and to recover Primark's profits, actual damages, enhanced profits and damages, costs, and reasonably attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### THIRD CLAIM FOR RELIEF
**(Federal Unfair Competition)**

81.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

82.     Primark's use of confusingly similar imitations of the Vans Trademarks and Trade Dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Primark's goods are manufactured or distributed by Vans, or are affiliated, connected, or associated with Vans, or have the sponsorship, endorsement, or approval

of Vans.

83.     Primark has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a). Primark's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and purchasing public and injury to Vans' goodwill and reputation as symbolized by the Vans Trademarks and Trade Dress, for which Vans has no adequate remedy at law.

84.     Primark's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Vans Trademarks and Trade Dress to Vans' great and irreparable harm.

85.     Primark's conduct has caused, and is likely to continue causing, substantial injury to the public and to Vans. Vans is entitled to injunctive relief and to recover Primark's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**FOURTH CLAIM FOR RELIEF**
**(Federal False Advertising)**

86.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

87.     Vans and Primark are competitors in the apparel, footwear and accessories business.

88.     Upon information and belief, Primark or its compensated endorsers, influencers, or agents have made false statements, omitted statements and/or distributed misleading promotional materials in interstate commerce in connection with and in the advertising and promotion of its goods, including the Infringing Products.

89.     Upon information and belief, Primark or its compensated endorsers, influencers, or

agents have made false statements or omissions of facts regarding the nature, characteristics and quality of its Infringing Products, or statements that are false in their necessary implications.

90.     The false statements or omissions contained in Primark's promotional materials and otherwise made by Primark, or made by its compensated endorsers, influencers, or agents, are material to a customer's determination and opinion regarding Primark's products, including the Infringing Products.

91.     The false statements or omissions contained in Primark's promotional materials and otherwise made by Primark, or made by its compensated endorsers, influencers or agents are likely to deceive or confuse a substantial segment of the audience of such statements.

92.     As a result of Primark's conduct, false statements, and omissions in advertising, and the conduct, false statements, and omissions of Primark's compensated endorsers, influencers, or agents, Vans has lost, and will continue to lose, its hard-earned goodwill amongst its consumers.

93.     As a result of Primark's above-described conduct, Vans has been irreparably harmed and has incurred, and will continue to incur, damages in an amount to be determined at trial.

94.     Primark has caused and is likely to continue causing substantial injury to the public and to Vans, and Vans is entitled to injunctive relief and to recover Primark's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1125.

## <u>FIFTH CLAIM FOR RELIEF</u>
### (New York Unfair and Deceptive Trade Practices)

95.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

96.     Primark is intentionally and in bad faith passing off its Infringing Products as those of Vans, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or

approval of Primark's goods, causing a likelihood of confusion as to Primark's affiliation, connection, or association with Vans, and otherwise damaging the public.

97.     Primark has intentionally engaged in bad faith deceptive trade practices by failing to disclose, and failing to require its endorsers and influencers to disclose, that Primark is providing compensation in exchange for endorsements provided by influencers.

98.     Primark's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statute of New York, N.Y. GEN. BUS. Law § 349.

99.     Primark's deceptive trade practices have caused and are likely to cause substantial injury to the public and to Vans. Vans is therefore entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

100.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

101.     Due to its over forty years of continuous use, Vans owns valid and enforceable common law rights in the Vans Trademarks and Trade Dress.

102.     Primark's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Vans. Vans has no adequate remedy at law for this injury.

103.     Upon information and belief, Primark acted with full knowledge of Vans' use of, and common law rights in, the Vans Trademarks and Trade Dress and without regard to the likelihood of confusion of the public created by Primark's activities.

104.    Primark's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Vans Trademarks and Trade Dress to the great and irreparable injury of Vans.

105.    As a result of Primark's acts, Vans has been damaged in an amount not yet determined or ascertainable. At a minimum, however, Vans is entitled to injunctive relief, to an accounting of Vans' profits, damages, and costs. Further, in light of the deliberately fraudulent and malicious use of confusingly similar imitations of Vans Trademarks and Trade Dress, and the need to deter Primark from engaging in similar conduct in the future, Vans is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Vans prays that:

1.      Primark and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other person acting for, with, by, through, or under authority from Primark, or in concert or participation with Primark, and each of them, be enjoined both preliminarily and permanently from:

> a.  using the Vans Trademarks and Trade Dress or any copy, reproduction, colorable imitation, or simulation of the Vans Trademarks and Trade Dress on or in connection with Primark's goods;

> b.  using any trademark, name, logo, design, or source designation of any kind or in connection with Primark's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Vans' trademarks, trade dress, names, or logs, including, but not limited to, the Vans Trademarks and Trade Dress;

c.  using any trademark, name, logo, design, or source designation of any kind on or in connection with Primark's goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Vans, or are sponsored or authorized by Vans, or are in any way connected or related to Vans;

d.  passing off, palming off, or assisting in passing off or palming off Primark's goods as those of Vans, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

e.  manufacturing, distributing, importing, advertising, promoting, offering for sale, or selling the Infringing Products or other similar goods.

2.      Primark be ordered to cease offering for sale, marketing, promoting, and selling, to remove from its retail stores, and to recall all products under or bearing a confusingly similar imitation of the Vans Trademarks and Trade Dress, including, but not limited to, the Infringing Products, which are in Primark's possession or have been shipped by Primark or under its authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Primark;

3.      Primark be ordered to deliver up for impoundment and for destruction all footwear, apparel, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationary, or other materials in the possession, custody or under the control of Primark that are found to adopt or infringe any of Vans trademarks or trade dress, including, but not limited to, the Vans Trademarks and Trade Dress, or that otherwise unfairly compete with Vans and its products;

ME1 28811077v.3

4.      Primark be compelled to account to Vans for any and all profits derived by Primark from the sale or distribution of Infringing Products as described in this Complaint;

5.      Vans be awarded all damages caused by the acts forming the basis of this Complaint;

6.      Based on Primark's knowing and intentional use of the Vans Trademarks and Trade Dress and confusingly similar imitations of the Vans Trademarks and Trade Dress, the damages awarded be trebled and the award of Primark's profits be enhanced as provided for by 15 U.S.C. § 1117(a) and (b).

7.      Primark be required to pay to Vans the costs and reasonable attorneys' fees incurred by Vans in this action pursuant to 15 U.S.C. § 117(a) and N.Y. GEN. BUS. Law § 349(h);

8.      Vans be awarded prejudgment and post-judgment interest on all monetary awards; and

9.      Vans have such other and further relief as this Court may deem just.

## JURY TRIAL DEMAND

Vans respectfully demands a trial by jury on all claims and issues so triable.


DATED: December 18, 2018              **VANS, INC. and VF OUTDOOR, LLC**

                                       *By their Attorneys*


                                       By:         s/ James H. Donoian

                                       James H. Donoian
                                       Aya Cieslak-Tochigi
                                       McCarter & English, LLP
                                       825 Eighth Avenue, 31st Floor
                                       New York, NY 10019
                                       P:  212-609-6817
                                       E:  jdonoian@mccarter.com
                                            acieslaktochigi@mccarter.com

ME1 28811077v.3

Keith Toms (*pro hac vice* forthcoming)
Quincy Kayton (*pro hac vice* forthcoming)
McCarter & English, LLP
265 Franklin St.
Boston, MA 02140
P: 617-449-6591
E: ktoms@mccarter.com
E: qkayton@mccarter.com

Aaron Y. Silverstein
Saunders & Silverstein LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
asilverstein@sandsip.com
Telephone: 978-463-9100

ME1 28811077v.3